NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HOWLINK GLOBAL LLC,**
*Plaintiff-Appellant,*

**v.**

**NETWORK COMMUNICATIONS INTERNATIONAL CORP., AND CONSOLIDATED TELECOM, INC.,**
*Defendants-Appellees.*

---

2013-1181

---

Appeal from the United States District Court for the Eastern District of Texas in No. 11-CV-0071, Judge Ron Clark.

---

Decided:  April 2, 2014

---

ADRIAN M. PRUETZ, Glaser Weil Fink Jacobs Howard Avchen & Shapiro, LLP, of Los Angeles, California, argued for plaintiff-appellant.  With him on the brief were ERICA J. VAN LOON, ANDREW Y. CHOUNG, and AVRAHAM SCHWARTZ.

DARRELL G. DOTSON, Stevens Love, of Longview, Texas, argued for defendant-appellee Network Communications International Corp.  With him on the brief were

GREGORY P. LOVE and SCOTT E. STEVENS.  Of counsel on the brief was TODD Y. BRANDT, of Houston, Texas.

K.A.D. CAMARA, Camara & Sibley LLP, of Houston, Texas, argued for defendant-appellee Consolidated Telecom Inc.

---

Before LOURIE, BRYSON, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

HowLink Global LLC ("HowLink") filed suit against Network Communications International Corp. ("NCIC") and Consolidated Telecom, Inc. ("CTEL") (collectively, "Defendants") alleging infringement of U.S. Patent No. 7,876,744 B2 ("the '744 patent").  The '744 patent relates to collect calling using Voice over Internet Protocol ("VoIP") technology.  NCIC and CTEL provide VoIP-based collect call systems and services to various correctional facilities.  After a magistrate judge construed numerous disputed terms of the '744 patent, the district court adopted the magistrate judge's findings and conclusions.  Based on these constructions, the parties stipulated to non-infringement of the '744 patent.

On appeal, HowLink challenges the construction of two terms: (1) "temporarily transmitting voice of a caller to the called terminal to identify the caller when the second communication link is established," and (2) "prohibiting voice transmission until a collect call acceptance arrives after the temporary voice transmission."  The dispute over these claims is about whether the claims of the '744 patent require that a caller be able to talk to the called party temporarily before a decision to accept the collect call is made.  Because we find that the district court correctly construed the terms to require the transmission of a "live" voice, for this purpose, we *affirm* the

district court's claim construction, and, hence, judgment of non-infringement.

## I. BACKGROUND

## A. The '744 Patent

HowLink is the exclusive owner by assignment of the '744 patent. The '744 patent, which issued on January 25, 2011, is titled "Method for Collect Call Service Based on VoIP Technology and System Thereof." '744 Patent, at [45], [54] (filed Apr. 4, 2005). The patent describes a method and system for making collect calls over a VoIP network using a collect call switch. Generally, the collect call system includes a calling terminal connected to a calling gateway. The calling gateway then communicates with a called gateway through a VoIP network. This called gateway is connected to a collect call switch, and the collect call switch communicates with the called terminal. When a calling party places a collect call through a calling terminal, the calling party initiates the collect call by dialing the called terminal. Next, the collect call switch establishes a first communication link between the collect call switch and the called gateway, and a second communication link between the collect call switch and the called terminal.

The patent describes several embodiments of the VoIP collect call system using these two communication links. For example, Figure 5, reproduced below, discloses a flowchart of signaling on various collect call systems.



FIG. 5

The section of the written description corresponding to Figure 5 outlines several relevant steps:

At step 310, the called gateway requests PSTN [(public switched telephone network)] link to the collect call switch. The collect call switch establishes PSTN link to the called gateway.

At step 315, the collect call switch calls the called terminal by use of the collect call number included in the collect call request. When the called terminal answers, the collect call switch establishes PSTN link to the called terminal, and at step 320, outputs voice announcement telling it is a collect call.

At step 325, after finishing voice announcement, the collect call switch connects temporarily the voice call link between the caller terminal and the called terminal so that the called party can recognize the caller. The step 325 may be omitted

according to the telecommunication service provider's policy.

At step 330 to 340, after releasing voice call link, a voice announcement for request to accept the collect call is outputted to the called terminal.

'744 Patent col.8 ll.40–57. Figures 6 and 7 disclose identical steps for providing a voice announcement for a collect call, with a collect call switch temporarily connecting the caller terminal with the called terminal. *See* '744 Patent col.8 ll.45–54, col.9 ll.37–38, col.10 ll.8–9.

Representative Claim 1[1] states:

1. A method of providing a collect call service based on a voice over Internet Protocol (VoIP) system, the method comprising:

establishing a first communication link between a called gateway and a collect call switch, on receiving a collect call request from a caller terminal via a VoIP network located between i) a calling gateway being coupled to the caller terminal and ii) the called gateway being coupled to the collect call switch, wherein the caller terminal can access the called gateway by use of already known access information;

---

[1] The claim language of the other independent claims slightly differs from claim 1. In claims 9 and 23, the claim language states "temporarily *transmit* voice of a caller to the called terminal to identify the caller when the second communication link is established." In claims 9, 11, 13, 18, and 23, the claim language states "prohibiting *the* voice transmission until the collect call acceptance arrives after the temporary voice transmission." These differences are not meaningful to our analysis, however.

establishing a second communication link between the collect call switch and the called terminal;

*temporarily transmitting voice of a caller to the called terminal to identify the caller when the second communication link is established, and then prohibiting voice transmission until a collect call acceptance arrives after the temporary voice transmission;*

connecting the first communication link and the second communication link to initiate a billing process for the second communication link responsive to the collect call acceptance in the form of a dual tone multi-frequency (DTMF) signal from the called terminal; and

releasing the connected links to end the billing process responsive to a normal call end request from one of the caller terminal and the called terminal.

'744 Patent col.14 ll.6–10 (emphasis added).

The original independent claims of the application that issued as the '744 patent did not include the emphasized "temporarily transmit[ting] voice of a caller to the called terminal to identify the caller when the second communication link is established, and then prohibiting voice transmission until a collect call acceptance arrives after the temporary voice transmission" limitation. *See, e.g.*, Joint Appendix ("J.A.") 366–373. Original dependent claims 4 and 10, however, claimed "temporarily permitting voice transmission which allows a called party to identify a caller . . . ." J.A. 367, 369.

During the prosecution of the '744 patent, the examiner rejected numerous original claims under 35 U.S.C. § 103 as obvious, in part over U.S. Patent No. 6,788,674 ("Karamchedu"). Karamchedu discloses a collect call

system where a caller sends a request to a "Bridgeport" that then calls the called party, plays a message to announce the call, and connects the caller to the called party if the called party accepts the call. *See* U.S. Patent No. 6,788,674 col.6 l.11–col.7 l.9 (filed July 20, 2001). The Karamchedu written description states that, "upon the callee answering the call from the Bridgeport, the Bridgeport may announce a message to the callee such as 'Bob is attempting to make a collect call.'" *Id.* col.6 ll.20–23. The examiner stated that Karamchedu teaches the limitation included in dependent claims 4 and 10 that claim "temporarily *permitting voice transmission which allows a called party* to identify a caller when the second link is established, and then prohibiting voice transmission until the collect call acceptance arrives after the temporary voice transmission." *See* J.A. 351, 356 (emphasis added). When, in response, HowLink offered amended claims 26, 28, and 31, reciting "temporarily transmitting voice of a caller," the examiner indicated that those claims would be allowed if rewritten in independent form to include the express limitations of "temporarily *transmit[ting] voice of a caller to the called terminal* to identify the caller when the second link is established, and then prohibiting the voice transmission until the collect call acceptance arrives after the temporary voice transmission." J.A. 402–04. After the applicant amended the independent claims consistent with these directives, the examiner allowed the claims.

## B. Procedural History

On February 15, 2011, HowLink filed a complaint asserting patent infringement of the '744 patent against NCIC in the U.S. District Court for the Eastern District of Texas.[2] Compl., *HowLink Global LLC v. Centris Info.*

---

[2] HowLink also asserted infringement of the '744 patent against Centris Information Systems, LLC, Con-

*Sys., LLC*, No. 4:11-cv-00071-RC-ALM (E.D. Tex. Feb. 15, 2011), ECF No. 1.  On April 18, 2011, HowLink filed a First Amended Complaint adding patent infringement claims against CTEL.  First Am. Compl., *HowLink Global LLC v. Centris Info. Sys., LLC*, No. 4:11-cv-00071-RC-ALM (E.D. Tex. Apr. 18, 2011), ECF No. 16.[3]  The district court judge referred the case to a magistrate judge for claim construction.

On June 28, 2012, the magistrate judge issued his Report and Recommendation construing numerous disputed claim terms, including the two terms at issue in this appeal.  *See* Report and Recommendation of U.S. Magistrate Judge, *HowLink Global LLC v. Centris Info. Sys., LLC*, No. 4:11-cv-00071-RC-ALM (E.D. Tex. June 28, 2012), ECF No. 154 ("R&R").

First, the magistrate judge construed the "temporarily transmit[ting] voice of a caller" term as "for a limited time, transmitting the *live* voice of a caller so that the caller can speak to the called party and the called party can hear what the caller is saying when the second communication link is established."  *Id.* at 28 (emphasis added).  In support, the magistrate judge pointed to the claim language itself as contemplating a "live voice," explaining that "[t]he claim thus recites that the 'prohibiting' occurs after the 'temporarily transmitting,' as indi-

---

versant Technologies, Inc., JCW Electronics I Ltd., L.L.P., JCW Electronics I, L.P., JCW Electronics, Inc., Teletrust, Inc., Trio Communications, Inc., and Value-Added Communications, Inc.  HowLink later voluntarily dismissed its claims against these Defendants.

[3]      HowLink also added Network Enhanced Telecom, L.L.P. and Network Operator Services, Inc.  Eventually, HowLink also voluntarily dismissed its claims against these Defendants.

cated by the word 'then.'" *Id.* at 24. He then noted that the parties have not disputed this order of steps and concluded that, "what is 'temporarily transmitt[ed]' must be something that can then be 'prohibit[ed].'" *Id.* at 25. As such, "if the step of 'temporarily transmitting voice of a caller' did not involve the live voice of the caller, the step of '*then* prohibiting voice transmission' would be superfluous." *Id.* The magistrate judge also concluded that, because of the grammatical structure of the claim language itself, "a person of ordinary skill in the art would readily understand that the antecedent basis for the 'voice transmission' recited in the 'prohibiting' step is the 'voice of a caller' recited in the 'temporarily transmitting' step." *Id.* (citations omitted). "Based on this antecedent basis relationship, 'voice of a caller' and 'voice transmission' carry the same meaning throughout the claims." *Id.* at 26 (citing *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012)). He also found that "[a]ny remaining doubt about the propriety of a limiting construction is eliminated by the prosecution history" exchange relating to the Karamchedu reference. *Id.* He noted that, because Karamchedu does not disclose transmission of a caller's live voice, it *implies* that the caller's name is either pre-recorded or computer-generated. The examiner noted in particular that "the patentee overcame Karamchedu by amending the claims in a fashion that 'put the examiner and the public on notice of the invention's crucial feature,' insofar as the patentee relied upon that feature to overcome Karamchedu, namely the temporary transmitting of a 'voice of a caller.'" *Id.* at 27. And, to give effect to this disclaimer, the magistrate judge found that the construction should require transmission of the "live voice" of the caller. *See id.* at 27–28.

Second, the magistrate judge construed the "prohibiting voice transmission" term as "preventing the called party from continuing to hear what the caller is saying

until after the collect call acceptance." *Id.* at 30.   In support, the magistrate judge referenced his supporting analysis regarding the "temporarily transmit[ting] voice of a caller" term.  He also stated:

> While some embodiments might provide two-way communication during the temporary "voice transmission," such a limitation is not recited by the claim language and is not clearly established in the specification. Instead, the temporary voice transmission is recited in the claims as "temporarily transmitting voice of a caller to the called terminal" and is disclosed as enabling the called party to recognize the caller, not vice versa.

*Id.* at 29.

On July 12, 2012, HowLink filed its Objections to the Report and Recommendation with respect to the constructions of these two claim terms.  Objection to Report and Recommendations Regarding Claim Construction, *HowLink Global LLC v. Centris Info. Sys., LLC*, No. 4:11-cv-00071-RC-ALM (E.D. Tex. July 12, 2012), ECF No. 159. HowLink claimed that the magistrate judge improperly limited the phrase, "voice of a caller," to mean only the caller's "live" voice, and excluded the caller's "recorded" voice from the scope of the claims. *Id.* at 1.

On August 29, 2012, the district court issued an Order adopting the Magistrate Judge's Report and Recommendation.   Order Adopting Report and Recommendation of U.S. Magistrate Judge, *HowLink Global LLC v. Centris Info. Sys., LLC*, No. 4:11-cv-00071-RC-ALM (E.D. Tex. Aug. 30, 2012), ECF No. 167 ("Order Adopting R&R").  In addressing the claim language now on appeal, the district court found that "a person of ordinary skill in the art would read the claims to mean that 'voice transmission' refers to the same thing throughout the claims and that what is 'prohibit[ed]' is what was 'temporarily transmit[ed],' particularly in light of the use of the word 'then'

to introduce the 'prohibiting' step." *Id.* at 5. Accordingly, he concluded that "what is 'temporarily transmit[ed]' is the 'live' voice of a caller because there would be no need to 'prohibit' a pre-recorded voice." *Id.* The court also found that the patentee made a "clear and unmistakable" disavowal by amending the claim language from "temporarily transmitting voice transmission" to "temporarily transmitting voice of a caller" to overcome the examiner's rejection. *Id.* at 6.

Based on these claim constructions, HowLink agreed that it could not prevail on the issue of infringement. Consequently, the parties jointly filed a Motion for Approval of Stipulated Judgment of Noninfringement. On October 19, 2012, the district court granted the motion and entered judgment in favor of Defendants on HowLink's claim for infringement of the '744 Patent.

HowLink timely filed its Notice of Appeal on November 13, 2012. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

On appeal, HowLink challenges the construction of two terms: (1) "temporarily transmit[ting] voice of a caller to the called terminal to identify when the second communication link is established" and (2) "prohibiting voice transmission until the collect call acceptance arrives after the temporary voice transmission." HowLink argues that the district court incorrectly construed these terms to require the transmission of a "live" voice. We disagree, and find no error with the district court's constructions.

This court reviews a district court's claim construction de novo. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, No. 2012-1014, 2014 WL 667499, at *1 (Fed. Cir. Feb. 21, 2014) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). To determine the scope and meaning of a claim, we can

examine the claim language, written description, prosecution history, and any relevant extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315–19 (Fed. Cir. 2005) (en banc). Generally, a claim term is given its ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of invention. *Id.* at 1312–13. "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms," and "the context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314. In addition, we must read claims in view of the written description, which "is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The written description "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.* at 1321 (quoting *Vitronics*, 90 F.3d at 1582). "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317.

We collectively address the district court's constructions of the two disputed terms. The relevant language from representative claim 1 states, "[(1)]temporarily transmitting voice of a caller to the called terminal to identify the caller when the second communication link is established, and then [(2)]prohibiting voice transmission until a collect call acceptance arrives after the temporary voice transmission." '744 Patent col.14 ll.6–10. The magistrate judge construed the "temporarily transmitting voice of a caller" term as "for a limited time, transmitting the *live* voice of a caller so that the caller can speak to the called party and the called party can hear what the caller is saying when the second communication link is established." *See* R&R at 28 (emphasis added). It also construed the "prohibiting voice transmission" term as "preventing the called party from continuing to hear what

the caller is saying until after the collect call acceptance." *Id.* at 30.

The claim language itself requires a "live" voice. "[W]e look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics Corp.*, 90 F.3d at 1582 (citing *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995)). It is clear from the claim language that the "after the temporary voice transmission" limitation refers back to the earlier "temporary transmitting voice of a caller" limitation. Indeed, at oral argument before this court, Appellant's counsel conceded that "temporary voice transmission" has the same meaning as "temporarily transmitting the voice of a caller." Oral Arg. at 6:20–58, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 13-1181.mp3; *see also* Appellant Reply Br. 19 (HowLink admits that "temporarily transmitting voice of a caller" and "temporary voice transmission" both refer to the same thing—"the temporary transmission for the collect call request.").

The claim language further states "then prohibiting *voice transmission* until a collect call acceptance arrives after the temporary *voice transmission.*" *See* '744 Patent col.14 ll.8–10 (emphases added). Again, Appellant's counsel acknowledged that the "prohibited voice transmission" is a "live" voice. Oral Arg. at 6:58–7:07. Appellant's counsel then admitted that the term "voice transmission" as found in "prohibited voice transmission" has the same meaning as "voice transmission" in "temporary voice transmission." *Id.* at 7:07–8:03. Pulling all of these terms together into context, the claim language compels the conclusion that the term "temporary voice transmission" must refer to a "live" voice.

The structure of the claim language also implies "live" voice transmission. The phrase, "*then* prohibiting voice

transmission," requires that the temporary voice transmission in the claims refer to a "live" voice. As the district court concluded, "if the step of 'temporarily transmitting voice of a caller' did not involve the live voice of the caller, the step of 'then prohibiting voice transmission' would be superfluous. Such a reading would be disfavored." *See* R&R at 25 (citing *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." (citations omitted)); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim." (citations omitted))). To clarify, if the temporary voice transmission was a recording, there would be no need to "*then prohibit*[ ]" voice transmission because the recording would end on its own. We agree with the district court's conclusion; the temporary voice transmission is a "live" voice, as there is no need to prohibit the transmission of a pre-recorded voice.

Appellant further asserts that the term "voice of the caller" is different than "voice transmission" since different terms are used. *See* Appellant Reply Br. 17 (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different *meanings*" (emphasis in original))). We agree that the two terms "voice of a caller" and "voice transmission" do not have the same exact scope, but conclude that they still refer to the same type of transmissions. The "temporarily transmitting voice of a caller" refers to the one way transmission of the voice from the caller to the callee, whereas "voice transmission" can broadly refer to voice transmissions from the caller or callee. Accordingly, "voice transmission" encompasses a broader subset of transmissions. Therefore, while the scope of the term "voice transmis-

sion" is different than the "voice of a caller," both of these "voice transmissions" still refer to a "live" voice or voices.

The written description supports the conclusion that the terms include a "live voice." It specifically describes temporarily transmitting the voice of a caller to the called terminal to identify the caller in a single section—the one describing step 325.[4] Consistent with the claim language, the description of the embodiments points to a construction where "transmitting the voice of a caller" requires a "live" voice. Specifically, the key language states: "At step 325, after finishing voice announcement, the collect call switch connects temporarily the voice call link between the caller terminal and the called terminal so that the called party can recognize the caller." '744 Patent col.8 ll.49–52. This "voice call link" describes a connection to allow the temporary transmission of the "live" voice of the caller to the called terminal to identify the caller to the callee.

Although HowLink argues that the written description explicitly states that the invention can omit step 325, all of the independent claims of the '744 patent include this limitation. While a written description may describe multiple embodiments, the patent is still defined by the claims. *See TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("the mere fact that there is an alternative embodiment disclosed in the '828 patent that is not encompassed by district court's claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence."). Indeed, the claims track the disclosed steps, including step 325—where "the collect call switch connects temporarily the voice call link between the caller terminal and the called terminal." '744

---

[4] The specification refers back to the description of step 325 for identical steps 440 and 550.

Patent col.8 ll.49–51. Notably, every independent claim requires "temporarily transmit[ting] voice of a caller to the called terminal to identify the caller." And no disclosure is provided for pre-recording a message from a caller for this temporary voice transmission.

HowLink asserts that the written description does disclose a "voice announcement" that can include the recorded voice of a caller. HowLink contends that the invention may use the pre-recorded voice of a caller, stating that "[t]he key teaching here is that the calling party is identified to the called party using the caller's voice." Appellant Reply Br. 26. The written description, however, does not support Howlink's assertions. For example, as described, step 320 "outputs voice announcement telling it is a collect call," and step 330 is "a voice announcement for request to accept the collect call is outputted to the called terminal." '744 Patent col.8 ll.47–48, 55–57. The written description provides no further description of any voice announcements, nor even mentions pre-recording the voice of a caller. As such, nothing in the patent dissuades us from the conclusion that the claims all require that the temporary transmission include a "live" voice.

The parties spend a significant portion of their briefs addressing whether prosecution disclaimer applies to remove the possibility of a "recorded" voice of a caller in lieu of a "live" voice. We need not reach the question of prosecution history disclaimer in this case, however. This is so because, the claims and written description so clearly point to the correct construction in this case. Thus, while we find that the prosecution history is consistent with our conclusion that the disputed claim terms require "live" voice transmission, we do not determine whether, standing alone, the prosecution history would support a finding of clear and unmistakable disavowal of an alternative claim scope. *See Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the

claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope *narrower than it would otherwise be*." (emphasis added) (citations omitted)); *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321–22 (Fed. Cir. 2013) ("The meaning of the claim language is informed, as needed, by the prosecution history." (citations omitted)).

## III. CONCLUSION

For the foregoing reasons, and because we find that HowLink's remaining arguments are without merit, we find that the district court correctly construed the terms "temporarily transmitting voice of a caller to the called terminal to identify the caller when the second communication link is established" and "prohibiting voice transmission until a collect call acceptance arrives after the temporary voice transmission." Simply, the district court correctly concluded that, to practice the elements of the claims at issue, a caller must be able to talk to the called party temporarily before a decision to accept the call is made. Because HowLink admits that Defendants do not infringe under the district court's constructions, we affirm the district court's judgment of non-infringement of the '744 patent.

**AFFIRMED**